IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 21-cv-03201-PAB-SKC

ROBERT CARRAWAY,

    Plaintiff,

v.

STATE FARM FIRE AND CASUALTY INSURANCE COMPANY,

    Defendant.

**ORDER**

This matter is before the Court on defendant's Motion to Dismiss [Docket No. 15]. Plaintiff responded, Docket No. 16, and defendant replied. Docket No. 19. The Court has jurisdiction pursuant to 28 U.S.C. § 1332.

# I. BACKGROUND[1]

This dispute arises out of damage to plaintiff's property in Larkspur, Colorado, caused by a July 5, 2019 wind and hailstorm. Docket No. 7 at 2, ¶¶ 5, 7. At that time, defendant insured plaintiff's property under a "replacement cost value homeowner's policy," which covered risks of "direct physical loss or damage" to the property, including from wind and hail. *Id.* at ¶¶ 5–6. The storm damaged plaintiff's roof, gutters, HVAC unit, windows, and siding, and plaintiff submitted a claim to defendant. *Id.*, ¶¶ 8–9.

---

[1] The following facts, taken from plaintiff's Complaint and Jury Demand [Docket No. 7], are presumed to be true for purposes of this order unless otherwise noted. *See Brown v. Montoya*, 662 F.3d 1152, 1162 (10th Cir. 2011).

Defendant inspected the property, "acknowledged" the damage, and extended "coverage" for a "replacement cost value" of $21,353.58, as reflected in an October 14, 2020 repair estimate. *Id.*, ¶10. Plaintiff alleges that the coverage did not compensate plaintiff for the loss to the property because defendant's repair estimate undervalued the scope and cost of the loss, "contain[ed] improper pricing," and "did not account for certain elements required by both local building code and manufacturer's instructions." *Id.* at 3, ¶¶ 11–12. Plaintiff hired a public adjuster because of "[d]efendant's failure to recognize the full scope of the Loss" and to "properly investigate the Loss." *Id.*, ¶ 14.

The insurance policy provides that, in the event that the parties are unable to agree on an amount of loss, either party may demand an appraisal.[2] *Id.*, ¶ 16. The parties' repair estimates were over $70,000 apart and, because they were unable to reach an agreement on the value of the loss, plaintiff demanded appraisal. *Id.*, ¶¶ 15, 16–17. Both parties appointed an appraiser, and, on October 11, 2021, the appraisers settled the amount of loss at a replacement cost value of $60,864.26. *Id.*, ¶ 18. The appraisers identified $12,604.78 as depreciation value. *Id.*, ¶ 19.

---

[2] Plaintiff does not attach the policy to his complaint. Rather, he attaches various pages of what appear to be different documents. As relevant here, the first page of the exhibit is titled "Structural Damage Claim Policy" and bears defendant's name, *id.* at 10; the second page appears to be defendant's repair estimate, *id.* at 11; the third page is titled "Explanation of Building Replacement Cost Benefits Homeowner Policy Coverage A – Dwelling – 35 Windstorm and Hail." *Id.* at 12. In evaluating a Rule 12(b)(6) motion to dismiss, courts may consider not only the challenged complaint itself, but also attached exhibits and documents incorporated into the complaint by reference. *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009) ("[T]he district court may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity."). Defendant does not dispute the authenticity of these documents, and the Court finds it appropriate to consider them for their content. *Tal v. Hogan*, 453 F.3d 1244, 1264 n.24 (10th Cir. 2006) (when a court takes judicial notice of documents, it may do so only to "show their contents, not to prove the truth of the matters asserted therein").

The policy provides that, in order to recover depreciation, a policyholder must complete repairs within two years of the date of the loss, which would have been July 5, 2021 in this case. *Id.* at 4, ¶ 20. Plaintiff alleges that he "could not complete repairs before an agreement on the value of the Loss" because of defendant's "repeated failure to recognize the full scope of the Loss," which was determined on October 11, 2021. *Id.*, ¶¶ 21–22. Plaintiff further alleges that defendant's repair estimate states that, if plaintiff could not have repairs completed for the replacement cost in defendant's repair estimate, plaintiff should contact the claim representative before beginning repairs. *Id.*, ¶ 23. Plaintiff informed defendant on or about June 28, 2021 that he intended to fully repair the property and requested, on multiple occasions, that defendant extend the depreciation recovery deadline "in acknowledgement of the impossibility of [p]laintiff completing repairs by that time due to [d]efendant's failure to recognize the actual scope of the Loss." *Id.*, ¶¶ 24–25. Defendant refused to extend the deadline, and plaintiff alleges that defendant has "indicated that it will not pay the depreciation despite [d]efendnat's actions and failure to properly adjust the [c]laim being the reason that [p]laintiff could not collect depreciation." *Id.* at 4–5, ¶ 26.

Plaintiff brings three claims for relief: (1) breach of contract, (2) common-law bad faith, and (3) statutory bad faith pursuant to Colo. Rev. Stat. §§ 10-3-1115, 10-3-1116. *Id.* at 5–9, ¶¶ 28–45. Defendant moves to dismiss each of plaintiff's claims for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). *See generally* Docket No. 15.

## II. LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil

3

Procedure, a complaint must allege enough factual matter that, taken as true, makes the plaintiff's "claim to relief . . . plausible on its face." *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "The 'plausibility' standard requires that relief must plausibly follow from the facts alleged, not that the facts themselves be plausible." *RE/MAX, LLC v. Quicken Loans Inc.*, 295 F. Supp. 3d 1163, 1168 (D. Colo. 2018) (citing *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008)). Generally, "[s]pecific facts are not necessary; the statement need only 'give the defendant fair notice of what the claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam) (quoting *Twombly*, 550 U.S. at 555) (alterations omitted). However, a plaintiff still must provide "supporting factual averments" with his allegations. *Cory v. Allstate Ins.*, 583 F.3d 1240, 1244 (10th Cir. 2009) ("[C]onclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based." (citation omitted)). Otherwise, the court need not accept conclusory allegations. *Moffet v. Halliburton Energy Servs., Inc.*, 291 F.3d 1227, 1232 (10th Cir. 2002). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quotations and alterations omitted); *see also Khalik*, 671 F.3d at 1190 ("A plaintiff must nudge [his] claims across the line from conceivable to plausible in order to survive a motion to dismiss." (quoting *Twombly*, 550 U.S. at 570)). If a complaint's allegations are "so general that they encompass a wide swath of conduct, much of it innocent," then plaintiff has not stated a plausible claim. *Khalik*, 671 F.3d at 1191 (quotations omitted). Thus, even though modern rules of

pleading are somewhat forgiving, "a complaint still must contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." *Bryson*, 534 F.3d at 1286 (alterations omitted).

## III.  ANALYSIS[3]

### A.  Breach of Contract Claim

In Colorado, "a party attempting to recover on a claim for breach of contract must prove the following elements: (1) the existence of a contract; (2) performance by the plaintiff or some justification for nonperformance; (3) failure to perform the contract by the defendant; and (4) resulting damages to the plaintiff." *W. Distrib. Co. v. Diodosio*, 841 P.2d 1053, 1058 (Colo. 1992) (internal citations omitted).

The interpretation of an insurance policy is a legal question. *Pac. Specialty Ins. Co. v. Poirier*, 408 F. Supp. 3d 1241, 1246 (D. Colo. 2019) (citing *Allstate Ins. Co. v. Huizar*, 52 P.3d 816, 819 (Colo. 2002)).  An insurance policy is a contract, which should be interpreted consistently with the well-settled principles of contractual interpretation. *Chacon v. Am. Fam. Mut. Ins. Co.*, 788 P.2d 748, 750 (Colo. 1990).  The words of the contract should be given their plain meaning according to common usage, and strained constructions should be avoided. *Allstate Ins. Co. v. Starke*, 797 P.2d 14, 18 (Colo. 1990).  Clauses or phrases should not be viewed in isolation; rather, a policy's meaning must be determined by examining the entire instrument. *Huizar*, 52 P.3d at 819.  Policy

---

[3] Because the parties invoke Colorado law, the Court applies Colorado law in resolving the motion. *Cf. Grynberg v. Total S.A.*, 538 F.3d 1336, 1346 (10th Cir. 2008) ("Because the parties' arguments assume that Colorado law applies, we will proceed under the same assumption").

provisions that are clear and unambiguous should be enforced as written. *Chacon*, 788 P.2d at 750. Where a term in an insurance policy is ambiguous, meaning it is susceptible to more than one reasonable interpretation, the Court will construe the term against the drafter and in favor of providing coverage to the insured. *Sachs v. Am. Fam. Mut. Ins. Co.*, 251 P.3d 543, 546 (Colo. App. 2010).

In his breach of contract claim, plaintiff alleges that the policy creates a contract, that a covered loss occurred giving rise to coverage under the policy, that defendant breached the contract by "its actions as described above," and that plaintiff has incurred damages as a result. Docket No. 7 at 5, ¶¶ 29–33. Plaintiff provides no allegations regarding the second element of the breach of contract claim, namely, that he performed or that his nonperformance was justified or excused. Plaintiff argues that his nonperformance in completing the repairs before July 5, 2021 was excusable because the parties disputed the value of the loss, yet plaintiff does not make any such allegation or identify any term of the policy that provides support.

As to the third element, defendant's breach, defendant argues that plaintiff's allegations are conclusory because plaintiff "fails to identify any specific provisions of the [p]olicy at all, let alone which provisions [defendant] breached," or "any items he believes were covered under the [p]olicy but not paid, other than the unpaid depreciation from the appraisal award." Docket No. 15 at 6.

Although plaintiff has plausibly alleged that the policy creates a contract, *see* Docket No. 7 at 2, ¶¶ 5–6, the Court agrees with defendant that plaintiff has failed to plausibly allege that defendant's failure to pay the $12,604.78 in depreciation constituted a breach of the policy. Plaintiff's allegations plausibly establish that the

6

policy required repairs to be completed within two years of the date of the loss, which was July 5, 2021, *id.* at 4, ¶ 20, yet plaintiff did not complete the repairs by that date, and defendant refused to extend the deadline, even though the parties disputed the amount of the loss and the appraisers did not settle the amount of the loss until October 5, 2021, after the repair deadline. *Id.* at 3–4, ¶¶ 18, 22. Although plaintiff alleges that he "could not complete the repairs before an agreement on the value of the Loss," *see id.* at 4, ¶ 21, that allegation is conclusory, as plaintiff provides no facts as to why that was the case. *See Cory*, 583 F.3d at 1244; *Moffet*, 291 F.3d at 1232. Moreover, plaintiff does not allege that the policy required defendant to extend the deadline in such circumstances or that defendant's reliance on its estimate, and not the public adjuster's, breached a term of the contract before the appraisers valued the loss. Plaintiff alleges that defendant's repair estimate advised plaintiff to contact his claim representative prior to beginning repairs. *See id.*, ¶ 23. Plaintiff does not allege, however, that defendant had to approve repairs or that plaintiff could not "contact" his claim representative and immediately begin repairs. Finally, although plaintiff alleges that defendant repeatedly failed to recognize the full scope of the loss, *see id.*, ¶ 21, plaintiff does not identify any provision of the policy that defendant breached by relying on its own damage estimate before the appraisal process and while the process was pending.

Plaintiff's arguments in response do not change the Court's conclusion. Plaintiff states that he alleged that "[d]efendant indicated its intention not to release depreciation, whether or not [p]laintiff completed repairs to his property." Docket No. 16 at 3 (citing Docket No. 1 at 4, ¶ 26). But the allegation that plaintiff cites in the response is only that defendant "repeatedly refused to extend the [July 5, 2021 deadline] and has

7

indicated that it will not pay the depreciation despite [d]efendant's actions and failure to [p]roperly adjust the [c]laim being the reason that [p]laintiff could not collect depreciation." Docket No. 1 at 4–5, ¶ 26. This allegation does not support plaintiff's argument that defendant would never have paid depreciation regardless of whether plaintiff timely repaired his property. Rather, the allegation is that defendant would not extend the deadline, even though plaintiff believes his difficulty in meeting the deadline was defendant's fault.

Plaintiff also argues that he has plausibly alleged that defendant committed "anticipatory breach of contract." Docket No. 16 at 4–5. "In order to constitute an anticipatory breach of contract there must be a definite and unequivocal manifestation of intention on the part of the repudiator that he will not render the promised performance when the time fixed for it in the contract arises." *Johnson v. Benson*, 725 P.2d 21, 25 (Colo. App. 1986) (citing 4 A. Corbin, Contracts § 973 (1951); Restatement (Second) of Contracts § 250 comment b (1981) ("In order to constitute a repudiation, a party's language must be sufficiently positive to be reasonably interpreted to mean that the party will not or cannot perform.")).

Plaintiff's allegations do not support a claim that defendant anticipatorily breached the contract. Along with ¶ 26, discussed previously, plaintiff attempts to find support in ¶¶ 21, 22, and 23 of his complaint and three pages of the exhibit. *Id.* Paragraph 21 states that, "[d]ue to [d]efendant's repeated failure to recognize the full scope of the Loss and its payment of only actual cash value based on its own deficient estimate, [p]laintiff could not complete repairs before an agreement on the value of the Loss." Docket No. 1 at 4, ¶ 21. As the Court noted previously, however, plaintiff does

8

not explain why he could not have commenced (and completed) repairs earlier, given that he intended to repair the property. In his response to defendant's motion, plaintiff does not explain how this allegation shows defendant's "definite and unequivocal manifestation" of its intent not to perform. Paragraph 22 states that the scope and value of the loss were determined after the appraisal process on October 11, 2022. *Id.*, ¶ 22. That allegation similarly does not support an argument that defendant definitely and unequivocally manifested an intent not to perform under the policy. In his response, plaintiff cites ¶ 23 as stating that the "terms of [d]efendant's own insurance estimate instructed [p]laintiff not to commence repairs if there was a dispute with [d]efendant over the amount of the Loss, thereby prohibiting [p]laintiff from completing repairs until the value of the Loss was determined." Docket No. 16 at 4. But ¶ 23 states no such thing. Rather, that paragraph states only that plaintiff should contact his claim representative prior to beginning repairs if plaintiff could not have completed repairs for the amount of defendant's estimate. Docket No. 1 at 4, ¶ 23. There is no allegation that plaintiff was forbidden from beginning repairs until the value of the loss was determined or that defendant unequivocally communicated its intent not to perform as the policy required.

The first three pages of the exhibit attached to plaintiff's complaint do not lead to a different conclusion. That document, which appears to be missing pages, states, "[i]f your contractor's estimate is higher than ours, you should contact your claim representative prior to beginning repairs" and "[i]f you cannot have the repairs completed for the replacement cost estimated, please contact your claim specialist prior to beginning repairs." Docket No. 7 at 10–12. The Court agrees with defendant that neither provision bars plaintiff from commencing and completing repairs before July 5,

9

2021 so long as plaintiff has contacted his claim representative if his estimate exceeds defendant's. Because plaintiff has not plausibly alleged that defendant's handling of his claim breached a term of the contract, the Court will dismiss plaintiff's breach of contract claim.

### B.  Bad Faith Claims

Plaintiff's failure to plausibly allege that the policy required defendant to provide coverage for depreciation – because plaintiff did not complete repairs in time and failed to show that the policy required defendant to extend the deadline – is fatal to his breach of contract claim. It is also fatal to his bad faith claims. This Court has previously held that there can be no bad faith when there is no coverage. *See Tom's Urb. Master LLC v. Fed. Ins. Co.*, No. 20-cv-03407-PAB-SKC, 2022 WL 974654, at *8 (D. Colo. Mar. 31, 2022) (granting motion to dismiss bad faith claim because plaintiff failed to plausibly allege defendant denied coverage in breach of contract) (citing *Am. Fam. Mut. Ins. Co. v. Hansen*, 375 P.3d 115, 117 (Colo. 2016) ("American Family's denial of Hansen's claim in reliance on the unambiguous insurance contract was reasonable, and American Family cannot be held liable under sections 10-3-1115 and -1116 for statutory bad faith."); *Markel Ins. Co. v. Hollandsworth*, 400 F. Supp. 3d 1155, 1160 (D. Colo. 2019) ("Given the Court's conclusion that [defendant] is not entitled to coverage as a matter of law, [defendant's] counterclaims – namely, breach of contract and statutory bad faith of insurance contract – also fail as a matter of law.").

The Court would reach the same conclusion if it considered plaintiff's bad faith claims on their own. Colorado's bad faith statute provides in relevant part:

> A person engaged in the business of insurance shall not unreasonably delay or deny payment of a claim for benefits owed to or on behalf of any first-party claimant . . . .
>
> [F]or the purposes of an action brought pursuant to this section and section 10-3-1116, an insurer's delay or denial was unreasonable if the insurer delayed or denied authorizing payment of a covered benefit without a reasonable basis for that action.

Colo. Rev. Stat. §§ 10-3-1115(1)(a), (b)(II)(B)(2). Pursuant to § 10-3-1115, an insurer who delays or denies payment to its insured without a reasonable basis breaches its statutory duty of good faith and fair dealing. *See Canady v. Nationwide Affinity Ins. Co. of Am.*, No. 19-cv-00344-RBJ, 2020 WL 376494, at *3 (D. Colo. Jan. 23, 2020). To prove a claim of unreasonable delay or denial, an insured must demonstrate that: (1) the insurer delayed or denied payment of benefits to the insured, and (2) the delay or denial was without a reasonable basis. *See Am. Fam. Mut. Ins. Co. v. Barriga*, 418 P.3d 1181, 1185–86 (Colo. 2018).

"The reasonableness of the insurer's conduct is determined objectively and is 'based on proof of industry standards." *Schultz v. GEICO Cas. Co.*, 429 P.3d 844, 847 (Colo. 2018) (quoting *Goodson v. Am. Standard Ins. Co. of Wisc.*, 89 P.3d 409, 415 (Colo. 2004) (common law bad faith)); *Fisher v. State Farm Mut. Auto. Ins. Co.*, 419 P.3d 985, 994 (Colo. App. 2015). Further, "[a]n insurer's decision to deny benefits to its insured must be evaluated based on the information before the insurer at the time of that decision." *Schultz*, 429 P.3d at 848 (quoting *Peiffer v. State Farm Mut. Auto. Ins. Co.*, 940 P.2d 967, 970 (Colo. App. 1996)); *see also State Farm Mut. Auto. Ins. Co. v. Reyher*, 266 P.3d 383, 390 (Colo. 2011); *Bankr. Estate of Morris v. COPIC Ins. Co.*, 192 P.3d 519, 523 (Colo. App. 2008) ("[T]he question is whether a reasonable insurer under the circumstances would have denied or delayed payment of the claim."). An insurer

unreasonably delays a claim when it has no "reasonable basis" for denying or delaying an insured's claim. The Tenth Circuit has held there is "nothing unreasonable about [an insurance company's] denial of [a plaintiff's] claim because it had a reasonable basis for its action." *Wagner v. Am. Fam. Ins. Co.*, 569 F. App'x 574, 580 (10th Cir. 2014) (unpublished); *see also Etherton v. Owners Ins. Co.*, 829 F.3d 1209, 1226 (10th Cir. 2016) (quoting *Vaccaro v. Am. Fam. Ins. Grp.*, 275 P.3d 750, 759–60 (Colo. App. 2012) ("[I]f a reasonable person would find that the insurer's justification for denying or delaying payment of a claim was 'fairly debatable,' this weighs against a finding that the insurer acted unreasonably.")).

In his statutory bad faith claim, plaintiff alleges, as relevant here, that § 10-3-1115 "forbids a person engaged in the business of insurance from unreasonably delaying or denying payment of a claim for benefits" owed to a first-party claimant, that plaintiff is a first-party claimant, that defendant unreasonably delayed and denied payment of benefits under § 10-3-1115, and that plaintiff is entitled to twice the covered benefit, attorney's fees, and costs. Docket No. 7 at 8–9, ¶¶ 41–45. Plaintiff, however, does not elaborate on how defendant's conduct was unreasonable.

Plaintiff has alleged that his estimates and the public adjuster's differed from defendant's and also that the loss valuation calculated by the appraisers exceeded defendant's estimate, but, as defendant notes, "reasonable value disputes are not evidence of bad faith or unreasonable conduct." Docket No. 15 at 4 (quoting *Anderson v. Am. Nat'l Prop. & Cas. Co.*, 17-cv-03016-KMT, 2020 WL 406077, at *11 (D. Colo. Jan. 23, 2020)); *see also Etherton*, 829 F.3d at 1226 (quoting *Vaccaro*, 275 P.3d at 759-60) ("[I]f a reasonable person would find that the insurer's justification for denying or

delaying payment of a claim was 'fairly debatable,' this weighs against a finding that the insurer acted unreasonably.")).  As noted by defendant, the fact that an appraisal award may exceed an insurer's damage estimate is not alone evidence of bad faith.  *See* Docket No. 15 at 8 (citing *Andres Trucking Co. v. United Fire & Cas. Co.*, 488 P.3d 425, 430 (Colo. App. 2018) ("[A]n appraisal award, by itself, does not entitle either the insured or the insurer to judgment in its favor' on the insured's claims of breach of contract or statutory bad faith" and "[j]udgment does not follow directly from an appraisal because, unlike arbitration, the 'function of an appraisal award is not to determine the merits of any claim.'"  (quoting *Sec. Nat'l Ins. Co. v. Waloon Inv., Inc.*, 384 S.W.3d 901, 905 (Tex. App. 2012), and citing *Hometown Cmty. Ass'n v. Phila. Indem. Ins. Co.*, No. 17-cv-00777-RBJ, 2017 WL 6335656, at *6 (D. Colo. Dec. 12, 2017) (an appraisal is determinative of the amount of loss, but issues outside of the scope of the appraisal must be resolved by the court or fact finder))).

Although plaintiff asserts that defendant's estimate was low because defendant did not "account for certain elements required by both local building code and manufacturer's instructions," *see* Docket No. 7 at 3, ¶ 12, plaintiff provides no additional detail that could lend plausibility to this allegation and does not identify the building standards or manufacturer's instructions.  Plaintiff, therefore, has not plausibly alleged bad faith.  *See Cory*, 583 F.3d at 1244; *Canady*, 2020 WL 376494, at *4 ("The conclusory allegation that replacement of the entire roof was required by codes or standards, without identifying those codes or standards, is not sufficient.").

Plaintiff's conclusory and boilerplate allegation that defendant "unreasonably delayed and denied payment of benefits to [p]laintiff within the meaning of . . . § 10-3-

1115," see Docket No. 7 at 8, ¶ 43, provides no additional detail that defendant's reliance on its repair estimate before and during the appraisal process meant that defendant acted without a reasonable basis. In fact, the opposite appears to be true: defendant's reliance on its repair estimate constituted a reasonable basis for its coverage decision, and plaintiff has failed to identify a policy term – or an industry standard – that required defendant to act otherwise. See Canady, 2020 WL 376494, at *4 ("An insured should not be allowed to automatically accuse an insurer of bad faith in every situation in which the insurer disagrees with the insured about the value of a claim."); Ryals v. Am. Fam. Ins. Co., S.I., 20-cv-02736-NYW, 2021 WL 848195, at *7 (D. Colo. Mar. 5, 2021) (granting summary judgment in insurer's favor in part because "reasonable value disputes are not evidence of bad faith or unreasonable conduct" (quoting Anderson, 2020 WL 406077, at *11)); cf. Wagner, 569 F. App'x at 580 (there is "nothing unreasonable about [an insurance company's] denial of [a plaintiff's] claim because it had a reasonable basis for its action"). Plaintiff's allegations do not "permit the court to infer more than the mere possibility of misconduct," which means that plaintiff has not shown that he is entitled to relief. See Iqbal, 556 U.S. at 679. Because plaintiff has failed to plausibly allege that defendant acted without any reasonable basis, the Court will dismiss plaintiff's statutory bad faith claim.

      For the insured to prevail on a common-law bad faith claim, the insured must prove that (1) the insurer's conduct was unreasonable and (2) the insurer either had knowledge of or reckless disregard for the fact that its conduct was unreasonable. Travelers Ins. Co. v. Savio, 706 P.2d 1258, 1275 (Colo. 1985); see also Dale v. Guar. Nat'l Ins. Co., 948 P.2d 545, 551 (Colo. 1997). Where "an insurer maintains a mistaken

belief that the claim is not compensable, it may be within the scope of permissible challenge even if its belief is incorrect." *Brennan v. Farmers All. Mut. Ins. Co.*, 961 P.2d 550, 557 (Colo. App. 1998); *Warren v. Liberty Mut. Fire Ins. Co.*, 691 F. Supp. 2d 1255, 1272 (D. Colo. 2010).

In determining whether an insurer engaged in common-law bad faith, courts "determine whether [the] claim was properly investigated and whether the results of the investigation were subjected to a reasonable evaluation and review." *Savio*, 706 P.2d at 1275 (quoting *Anderson v. Cont'l Ins. Co.*, 271 N.W.2d 368, 377 (Wisc. 1978)). A common-law bad faith claim, therefore, requires "an absence of a reasonable basis for denial of policy benefits and the knowledge or reckless disregard of a reasonable basis for a denial." *Id.* (quoting *Anderson*, 271 N.W.2d at 377). The "knowledge of the lack of a reasonable basis may be inferred and imputed to an insurance company where there is a reckless disregard of a lack of a reasonable basis for denial or a reckless indifference to facts or to proofs submitted by the insured." *Id.* (quoting *Anderson*, 271 N.W.2d at 377). Therefore, "[i]f an insurer does not know that its denial of or delay in processing a claim filed by its insured is unreasonable, and does not act with reckless disregard of a valid claim, the insurer's conduct would be based upon a permissible, albeit mistaken, belief that the claim is not compensable." *Id.* But this does not mean that a plaintiff must show that an insurer's conduct is "willful and wanton" because, while a finding that an insurer has engaged in willful and wanton conduct would be sufficient to establish common law-bad faith, willful and wanton conduct is a subset of common-law bad faith, which considers a cumulative course of conduct. *See Dale*, 948 P.2d at 551–52. Ultimately, an insurance company recklessly disregards the unreasonableness

15

of its coverage position when it acts with knowledge that its position lacks a reasonable basis or when it is deliberately indifferent to information concerning the claim. Colo. Jury Instr., Civil 25:7 (citing *Savio*, 706 P.2d at 1275–76). A common-law bad faith claim, therefore, requires "an absence of a reasonable basis for denial of policy benefits and the knowledge or reckless disregard of a reasonable basis for a denial." *Savio*, 106 P.2d at 1275 (quoting *Anderson*, 271 N.W.2d at 377).

Plaintiff's common-law bad faith claim must be dismissed because, as discussed previously, plaintiff has failed to plausibly allege the "absence of a reasonable basis for [defendant's] denial of policy benefits." *See Savio*, 706 P.2d at 1275. As the Court has noted, defendant denied plaintiff's request for depreciation coverage because plaintiff failed to complete repairs before July 5, 2021, which the policy required.

Moreover, plaintiff has failed to plausibly allege that defendant acted with knowledge or reckless disregard of any unreasonable conduct. Plaintiff alleges that defendant "breached and continues to breach its duty by, among other things, engaging in one or more of the following acts." Docket No. 7 at 6, ¶ 37. An allegation that defendant engaged in "one or more" acts, without any factual development, is both a conclusory allegation that the Court need not accept as true, and shows that plaintiff has no factual basis for its allegations, yet made them anyway. *See Cory*, 583 F.3d at 1244 ("[C]onclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based."); *Moffet*, 291 F.3d at 1232 (the Court need not accept conclusory allegations as true).

Plaintiff lists 20 "acts" that it asserts may be instances of defendant's bad faith. Plaintiff's allegations fall far short of plausibly stating a claim because none contains any

factual development.  For instance, plaintiff alleges that defendant "unreasonably fail[ed] to properly construe the [p]olicy," "fail[ed] to effectuate a prompt, fair, and equitable settlement of [p]laintiff's [c]laim," "fail[ed] to give equal consideration to [p]laintiff's rights and interests as it has given its own interests."  Docket No. 7 at 6, ¶ 37.  But the complaint contains no factual averments about how defendant misconstrued the policy, that there were discussions of settlement that defendant did not handle properly, or how defendant valued its own interests above plaintiff's rights.  Plaintiff then lists seven of the unfair claim settlement practices found at Colo. Rev. Stat. § 10-3-1104(h), but plaintiff provides no factual development that any of these standards were violated or why they are even relevant to plaintiff's claims.  For instance, plaintiff alleges that defendant "fail[ed] to acknowledge and act reasonably promptly upon communications," *see* Docket No. 7 at 6, ¶ 37(h) (citing Colo. Rev. Stat. § 10-3-1104(h), yet there are no allegations about the parties communications to which defendant failed to timely respond.

The Court concludes that plaintiff's "boilerplate" allegations, which are "applicable to any insurance contract claim generally," are "devoid of any specific factual information" and are therefore insufficient to plausibly state a bad faith claim.  *See Ryals*, 2021 WL 848195, at *8; *O'Rourke v. Geico Cas. Co.*, No. 21-cv-00200-RM-NYW, 2021 WL 5071840, at *8 (D. Colo. July 2, 2021) ("Making cursory allegations that Geico has engaged in some level of unexplained unreasonable or bad faith conduct is insufficient to plead a plausible claim."), *report and recommendation adopted*, 2021 WL 7368174 (D. Colo. Dec. 8, 2021); *Musel Master, LLC v. Am. Fam. Mut. Ins. Co.*, No. 18-cv-02725-RBJ, 2019 WL 9244886, at *4 (D. Colo. June 24, 2019) (dismissing bad faith

17

claim where plaintiff alleged no facts to support conclusory allegations that the defendant insurer "unreasonably delayed and denied covered benefits without a reasonable basis for doing so by failing to conduct a fair investigation of [the plaintiff's] claim").

Plaintiff also fails to allege that defendant acted with knowledge or reckless disregard of the unreasonableness of its conduct.  See Savio, 706 P.2d at 1275.  Plaintiff alleges, that, "[i]n the course of evaluating [p]laintiff's [c]laim, [d]efendant acted with knowledge of or reckless disregard to the fact that no reasonable basis existed for delaying and denying the [c]laim."  Docket No. 7 at 8, ¶ 38.  Plaintiff provides no factual support for this conclusory assertion.  Plaintiff's allegation is nothing more than a "naked assertion devoid of further factual enhancement."  Iqbal, 556 U.S. at 678 (alteration and quotation marks omitted); see also Villa Maison Homeowners Ass'n, Inc. v. Owners Ins. Co., No. 17-cv-01542-RM-KMT, 2018 WL 11182673, at *2 (D. Colo. July 9, 2018) ("Simply saying that defendant acted unreasonably or unfairly, does not make it so.").  The Court concludes that "[t]here are simply no non-conclusory allegations in the [c]omplaint about any delay or bad faith conduct."  Villa Maison, 2018 WL 11182673, at *2.  Thus, plaintiff has not alleged sufficient facts to support his claim that defendant acted in bad faith, and the Court will dismiss plaintiff's common-law bad faith claim.

## IV.  CONCLUSION

For the foregoing reasons, it is

**ORDERED** that defendant's Motion to Dismiss [Docket No. 15] is **GRANTED**.  It is further

ORDERED that plaintiff's claims are **DISMISSED with prejudice**.[4]  It is further

**ORDERED** that this case is closed.

DATED September 26_, 2022.

BY THE COURT:

PHILIP A. BRIMMER
Chief United States District Judge

---

[4] In his response, plaintiff asks for leave to amend his complaint. Docket No. 16 at 8.  Pursuant to the Local Rules, however, "[a] motion shall not be included in a response or reply to the original motion. A motion shall be filed as a separate document." D.C.COLO.LCivR 7.1(d).  The Local Rules also require a party seeking to file an amended pleading to attach the proposed amended pleading. D.C.COLO.LCivR 15.1(b).  Plaintiff did not do so.  The Tenth Circuit recognizes "the importance of Fed. R. Civ. P. 7(b) and ha[s] held that normally a court need not grant leave to amend when a party fails to file a formal motion."  *Calderon v. Kan. Dep't of Soc. & Rehab. Servs.*, 181 F.3d 1180, 1186 (10th Cir. 1999); s*ee also Barnett v. Hall, Estill, Hardwick, Gable, Golden & Nelson, P.C.*, 956 F.3d 1228, 1236 (10th Cir. 2020) ("[C]ases are not to be litigated piecemeal.  The court should not have to address repeated "improvements" to the complaint.  When a party faces a motion to dismiss and it believes that it can overcome objections with an amendment to the pleading, it should seek leave to amend at that time."); *Johnson v. Spencer*, 950 F.3d 680, 721 (10th Cir. 2020) ("A district court may deny leave to amend when a plaintiff fails to file a written motion and instead merely suggest[s] she should be allowed to amend if the court conclude[s] her pleadings [a]re infirm.") (quotations omitted; alteration in original); *Albers v. Bd. of Cnty. Comm'rs*, 771 F.3d 697, 706 (10th Cir. 2014) (affirming prejudicial dismissal and denial of request to amend made in response to motion to dismiss without formal motion); *Burnett v. Mortg. Elec. Registration Sys., Inc.*, 706 F.3d 1231, 1238 n.4 (10th Cir. 2013) ("Where a plaintiff does not move for permission to amend the complaint, the district court commits no error by not granting such leave."); *see also Higgins v. City of Tulsa*, 103 F. App'x 648, 651 (10th Cir. 2004) (unpublished) ("[A] dismissal under Rule 12(b)(6) for failure to state a claim is generally *with* prejudice.").